JASON J. SOMMER (SBN 178316)
HANSEN, KOHLS, SOMMER & JACOB, LLP
1520 Eureka Road, Suite 100
Roseville, California 95661
Telephone:   (916) 781-2550
Facsimile:   (916781-5339
Email:   jsommer@hansenkohls.com

Attorneys for Defendant
CHRISTOPHER PETERMAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE L. WISSENBACK,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>OREGON JV LLC, a New York limited liability company, MENACHEM SIBLER (a.k.a. "Mike Silber") an individual, ADVANCED INVESTMENT CORP. d/b/a AIC, an Oregon limited liability company, AUSTIN L. WALKER, an individual, JOSEPH RUSSI, an individual, DEBORAH RUSSI, individually and as Trustee of the Robeert D. and Eva L. Kerner Family Trust and as trustee of the Joseph and Deborah Russi Trust, JOSEPH RUSSI, as Truste of the Robert D. and Eva L. Kerner Family Trust and as Trustee of the Joseph and Deborah Russi Trust, DAVE DUNCAN, individually and as an owner of Mid Oregon Builders, SHEA CAMBRIDGE, individually and as an owner of Mid Oregon Builders, JEREMY PARMENTER, an individual, CHRISTOPHER PETERMAN, an individual, DANIEL P. VAN ACKER, as an owner of Marscon LLC,<br><br>　　　　　　Defendants. | Case No. 2:24-CV-02047-DJC-JDP<br><br>**DECLARATION OF CHRISTOPHER PETERMAN IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO Fed. Rule Civ. Pro. § 12(b)(2)**<br><br>Date:　　　January 23, 2025<br>Time:　　　1:30 p.m.<br>Courtroom: 10<br>Address:　　13th floor of the Robert T. Matsui U.S. Courthouse, 501 I St, Sacramento, CA<br>Judge:　　　Hon. Daniel J. Calabretta<br><br>Complaint Filed:　7/25/24<br>Trial Date:　Not Set |

///

///

00039606.1

I, Christopher Peterman, hereby declare as follows:

1. I am a defendant in this action, am over the age of 18 and have personal knowledge of the facts contained herein and as to those facts stated on information and belief, I believe them to be true. If called upon to testify, I could and would competently testify thereto.

2. I was born and raised in Myrtle Creek, Oregon, and have exclusively maintained residency within the State of Oregon my entire life. I have never lived in California or otherwise lived outside of Oregon. I have had an Oregon Driver's license since I was 16 years old, which is current today. I earned a bachelor's degree from Western Oregon University in 2000 and a law degree from the University of Oregon School of Law in 2003.

3. I became licensed to practice law in the State of Oregon in 2003 and worked in private practice in Roseburg, Oregon, before opening my own law firm in 2010, also in Roseburg, Oregon, where I have worked for the past 20 years (14 of which were in my own law firm). I am not registered or licensed to do any kind of business or practice law in the courts of the State of California and have not done so. I have never advertised, marketed, or solicited business or clients in California.

4. I do not file or pay taxes in California and do not maintain any bank accounts in California. I do not own, nor have I ever owned, real property in California. I do not own any business, nor have I ever owned a business that operated in California. I have not ever owned, used, possessed, or held any mortgage or other lien on real property in California.

5. Within the last five years, I believe I have been to the State of California four times: Two times for short weekend visits with my family to go to theme parks, including Disneyland and Universal Studios, for a total of four or five nights; one time with my wife for a weekend away to go to Redwood National Forest, spending two nights; and in 2020, my family and I went to Los Angeles for a New Year's trip to see my alma mater play in the Rose Bowl (staying in California approximately six nights). Over the last 20 years, I have occasionally traveled to California to watch other football games involving my alma mater, the Oregon Ducks, either in Los Angeles against UCLA or USC or in the Bay Area to watch them against Cal Berkeley or Stanford. Each time I would travel to California for a football game, I would spend

the weekend (two nights) in California.  Over the last 20 years, I estimate that I have spent a total of approximately 60 nights in California.  I did not ever travel to California in connection with this case or any case or matter in which I represented Mr. Russi or any of his business entities.

6. On or about December 9, 2015, I was retained by Joseph Russi, who was at the time a resident of Oregon, regarding his interest in forming a business entity in Roseburg, Oregon, to operate a business located in Douglas County, Oregon.  Between the date of my initial retention on December 9, 2015, and the time I was retained on about July 24, 2019 to represent Joseph and Deborah Russi individually in connection with the AAA Arbitration initiated by Plaintiff against them in Oregon, I represented Mr. Russi and/or one of his business entities in several litigated matters, all of which were litigated in Oregon and involved disputes related to issues in Douglas County, Oregon.  At no time between December 9, 2015, and the present, did I ever provide legal advice or assistance related to the transfer of any real property from Joseph Russi (individually or as a trustee of any trust) or any of his business entities to Oregon JV LLC.

7. Pursuant to my retention to represent Joseph and Deborah Russi in the aforementioned arbitration in about July, 2019, I became aware that there was a litigation in Superior Court for the State of California for the County of Sacramento in Case No. 34-2017-00221329, wherein the Plaintiff in this case, Catherine Wissenback, filed claims against Robert Kerner (her father), and Joseph and Deborah Russi, both individually and as Trustees of certain trusts.  After I was retained in July, 2019, I became aware that on about July 9, 2018, the California Superior Court entered an Order on the motion of Robert Kerner, compelling Plaintiff to file arbitration in accordance with 2014 and 2017 Settlement agreements signed by Plaintiff, which provided that any dispute be resolved by binding arbitration through the American Arbitration Association.  Plaintiff filed for arbitration with AAA in 2019.  Pursuant to the terms of the 2017 settlement agreement the arbitration was held in Douglas County, Oregon.  I did not ever represent either Joseph or Deborah Russi in any capacity in the California litigation, or the underlying transactions that were the subject of that litigation and the arbitration.  Joseph and Deborah Russi, and Robert Kerner had separate counsel in California, and except in the Oregon arbitration where I represented Joseph and Deborah Russi individually in relation to the claims

against them, I have never represented Joseph or Deborah Russi, as Trustees of the Robert D. and Eva L. Kerner Family Trust, originally dated October 10, 1990, and amended and restated on February 18, 2012 ("Kerner Trust").  Nor have I ever represented them as Trustees of the Joseph and Deborah Russi Trust ("Russi Trust") in relation to any property or any transaction involving California.  I have not ever assisted with the assignment or transfer of any real or personal property into or out of the Kerner Trust or Russi Trust, including property located in Fair Oaks, California, Clearlake, California, or Lake Tahoe, California, or either of the two mobile home parks owned by Ponderosa Properties LLC and Capitol West Properties LLC.  Nor was I ever involved with the preparation of any loan documents involving the Kerner Trust or Russi Trust, or assets of those trusts.  Additionally, I have never assisted with the assignment or transfer of any real or personal property into or out of the Kerner Family Generations Trust FBO Catherine L. Wissenback and Deborah E. Kettlekamp (n/k/a /Russi) respectively.   I have never assisted with the transfer of real or personal property out of or into either of these trusts.

8. At no time did I ever assist with the transfer of any real or personal property from any trust identified above to Joseph or Deborah Russi.  I represented Joseph and Deborah Russi in their bankruptcy that was filed on about July 16, 2020.  The bankruptcy was eventually dismissed based upon an agreement between Joseph and Deborah Russi, Plaintiff Catherine Wissenback, and the Trustee on about March 15, 2021.  While I knew that the bankruptcy settlement agreement was supported by other investors in the development, I did not participate in or assist the Russis with any property transfer after the bankruptcy was dismissed on March 15, 2021, and at no time, did I prepare documents or participate in any way in the transfer of properties from Joseph Russi to Oregon JV LLC.  At no time prior to the acquisition of any properties by Joseph or Deborah Russi, did I ever come to learn or know the source of funds that may have been used to purchase any real property owned by Joseph or Deborah Russi, individually or as trustees of said above trusts, except to the extent that the acquisition was financed by a third party lender other than said trusts.  More specifically, other than might be disclosed in public records, I don't have any specific knowledge about the source of funds for any properties that may have later been transferred to Oregon JV LLC.  I had no knowledge or suspicion that any property

transferred from Joseph Russi to Oregon JV LLC: (1) was purchased with proceeds borrowed from any of the above identified trusts; (2) was purchased using proceeds from the sale of assets of any of the above identified trusts; or (3) was purchased using proceeds obtained from the sale of real property transferred from any of the above identified trusts to Joseph or Deborah Russi or any of their businesses.

9. I have not ever provided legal services to Joseph or Deborah Russi or any of their businesses related to real property located in California. To the best of my recollection, I have never provided legal services to anyone in connection with the purchase, sale, or transfer of real property located in California. Any legal services I may have provided to Joseph Russi, Deborah Russi, or their businesses relating to the transfer of any real property would have only involved real property located in Oregon and would have occurred prior to the dismissal of the Russi's bankruptcy.

10. Plaintiff alleges that the "Russi's began to transfer real property assets that they owned at the time they filed for bankruptcy in July 2020, to Oregon JV LLC, with actual intent to hinder, delay, or defraud Catherine, because they knew they were going to lose in the upcoming AAA arbitration." According to Oregon Secretary of State records, Oregon JV, LLC filed an application for authority to transact business in Oregon on March 17, 2021, and it was not organized until February 3, 2021. I had no knowledge of Oregon JV, LLC's existence before the dismissal of the bankruptcy on March 15, 2021. While as a litigator, I'm well aware that there is always a risk that the other party will prevail, in the arbitration that is referenced, the Plaintiff had signed two settlement agreements that the California Superior Court had upheld, which included comprehensive releases wherein Plaintiff released Joseph and Deborah Russi "completely and unconditionally, . . . from any claim based upon inheritance or any other theory . . ." and given these comprehensive releases, until I received the arbitration panel's decision, I did not reasonably believe that Plaintiff would prevail. In any event, I was unaware of these purported transfers to Oregon JV LLC and certainly did not assist in the purported transfers identified by Plaintiff.

11. Plaintiff further alleges that "Russi fraudulently transferred assets away from his

1  custody and control over to Oregon JV LLC to make it difficult if not impossible for Catherine to
2  collect on any judgment against him that she might receive in the arbitration proceeding." I deny
3  playing any role in the alleged transfers of said assets. Plaintiff further alleges that I "knew or
4  should have known about the improper transfers of properties held in Russi's name to Oregon JV
5  LLC while the Russi bankruptcy was still ongoing." I emphatically deny that I ever knew or
6  should have known that there was any purported transfers to Oregon JV, LLC, or that the
7  purported transfers alleged by Plaintiff were fraudulent or were done for the purpose of
8  preventing Plaintiff from collecting on any arbitration award. I further deny that I ever aided and
9  abetted Russi's alleged fraudulent transfer of properties from Russi to Oregon JV LLC, knowing
10 it was in violation of a Settlement Agreement the Russi's signed in order to have their bankruptcy
11 dismissed. As stated above, Oregon JV LLC was not created until February 3, 2021 and did not
12 apply to transact business in Oregon until March 17, 2021. I did not even become aware of the
13 allegations about deeds transferring title to properties owned by Joseph Russi to Oregon JV LLC
14 until after I was retained on May 27, 2022 to represent Joseph and Deborah Russi in fraudulent
15 transfer litigation filed by Plaintiff in Douglas County, Oregon, Case No. 22 CV11540, and I had
16 no actual knowledge that said transfers had occurred until I was served with this lawsuit and I
17 researched records of the Douglas County Recorder's Office.

18      12.     Being forced to defend myself in this litigation in California, will be an undue,
19 substantial hardship, and it will be expensive and inconvenient for me to do so, particularly given
20 the demands of my own law practice in the State of Oregon and my caseload. From what I
21 understand from the allegations in the Complaint filed by Plaintiff, nearly all of the allegations
22 revolve around transactions and occurrences in the State of Oregon involving Oregon properties.
23 I would estimate that there are no less than 15 witnesses, all of whom are Oregon residents and
24 likely outside the Court's subpoena authority, that would likely need to be called in order to
25 defend myself properly in this case. Potential witnesses could include Vanessa Pancic, the
26 bankruptcy Trustee, Rod Johnson, Robert Smejkel, Sarah Webb, Richard Filley, and Glenn
27 Mitchell to name just a few. Not only will I incur substantial attorney fees with a California
28 attorney, but it will also require me to be present for trial in California, if not for other reasons

HANSEN, KOHLS, SOMMER & JACOB, LLP

1  associated with this case.

2      I declare under penalty of perjury under the laws of the State of California that the

3  foregoing is true and correct. Signed this 16th of October, 2024, in Roseburg, Oregon.

                              /s/ Christopher Peterman
                              CHRISTOPHER PETERMAN