UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE L. WISSENBACK, | No. 2:24-cv-02047-DJC-JDP |
| Plaintiff, | |
| v. | ORDER |
| OREGON JV LLC, a New York limited liability company, et al., | |
| Defendants. | |

Pending before the Court is Defendant Christopher Peterman's Motion to Dismiss (Mot. Dismiss ("Mot") (ECF No. 5)) Plaintiff Catherine Wissenback's Complaint (Compl. (ECF No. 1)). Defendant is one of several named defendants in Plaintiff's suit. Plaintiff alleges five claims against Defendant Peterman: (1) fraudulent transfer with actual intent to hinder or delay and/or transfer to insider; (2) unjust enrichment; (3) aiding and abetting; (4) civil conspiracy; (5) monetary damages. Defendant Peterman argues that all claims against him should be dismissed because this Court lacks personal jurisdiction over him. For the reasons discussed below the Court GRANTS the Motion to Dismiss Defendant Peterman for lack of personal jurisdiction with leave to amend.

////

I. **Background**

A. **Parties' Backgrounds**

There are several named parties in the suit. But for purposes of this Order, the Court will discuss the individuals relevant to the pending Motion.

Plaintiff Catherine Wissenback, a resident of California, is a beneficiary of the Robert D. Kerner and Eva L. Kerner Family Trust ("Kerner Trust") and of the Kerner Family Generations Trust FBO Catherine L. Wissenback ("Catherine FBO Trust"). (Compl. ¶ 1.) Defendant Christopher Peterman[1] is an Oregon-based attorney and Oregon resident. (*Id*. ¶ 11.) Defendant Peterman is alleged to represent Plaintiff's brother-in-law and co-trustee of the Kerner Trust, Joseph Russi. (*Id*. ¶¶ 7,11, 24.) Joseph Russi is married to Plaintiff's sister, Deborah Russi, who is the trustee of the Catherine FBO Trust, and both are residents of Oregon. (*Id*. ¶ 7.) Joseph and Deborah Russi are accused of squandering Plaintiff's trust fund assets. (*See id*. ¶¶ 27, 28.)

B. **Factual Background**

Plaintiff's now-deceased parents created the Kerner Trust, originally dated October 10, 1990, and amended and reinstated February 18, 2012, in California. (*Id*. ¶¶ 15, 16.) This Trust was funded with various properties and some financial accounts. (*Id*. ¶ 17.) The properties included: the Kerner Family home in Fair Oaks, California, a Lake Tahoe, California vacation home and land in Clearlake, California. (*Id.;* Mot. at 8.) Under the Kerner Trust, Plaintiff and Deborah Russi were entitled to fifty percent of the final distribution, and each daughter's share would be distributed into a separate irrevocable FBO trust for their respective benefit. (Compl. ¶ 18.) Each FBO Trust was created and funded with fifty percent of two mobile home parks located in Pollack Pines, California and West Sacramento, California. (*Id*. ¶ 19.) Deborah Russi was

---

[1] The Court notes that the Complaint refers to Defendant Peterman's last name as both Peterman (Compl. ¶ 11,) and Peterson (*id*. ¶ 67,). Should Plaintiff amend her Complaint, the Court recommends ensuring that the names are consistent.

named the trustee of Plaintiff's FBO Trust. (*Id.* ¶ 21.) Plaintiff alleges that Deborah Russi never told her that an irrevocable trust was created for her benefit and never provided notice that she was entitled to a yearly accounting. (*Id.* ¶¶ 27, 28.) The Russis are accused of selling off some of the properties funding the trusts, draining the Kerner Family Trust, and funneling the money into their personal trust. (*Id.* ¶¶ 30–37.) The Russis are then accused of taking the assets and relocating to Oregon. (*Id.* ¶ 37.)

In July 2019, Plaintiff commenced an arbitration action against the Individual Defendants before the American Arbitration Association (Case No. 01-19-002-1447) following the improper and fraudulent property transfers and sales, and use of the Kerner Trust, by the Russis. (*Id.* ¶ 41.) To delay the Arbitration, Plaintiff states that the Russis filed for bankruptcy (*In re Joseph Francis Russi Jr. and Deborah Elaine Russi*, No. 20-61728-tmr) in the United States Bankruptcy Court, District of Oregon. (*Id.* ¶ 42.) The bankruptcy case was ultimately dismissed, (*id.* ¶ 43,) and a Settlement Agreement was executed in February 2021 requiring that the Russis transfer Plaintiff certain funds owed to her (*id.* ¶ 44). The Arbitration then resumed and resulted in a favorable decision for Plaintiff. (*Id.* ¶ 48.) However, the Russis had allegedly been transferring the real property assets away from their custody from the time of the bankruptcy proceedings, to make it difficult for Plaintiff to recover. (*Id.* ¶ 45.) The properties that the Russis are accused of transferring appear to all have been located in Oregon but are alleged to have been purchased with the funds stolen from the Kerner Family Trust. (*Id.* ¶ 45.)

Plaintiff claims "'on information and belief" that Defendant Peterman was involved in, and knew, or should have known, that these fraudulent transfers were occurring. (*Id.* ¶ 50.) Plaintiff also states that Defendant Peterman knew, or should have known, of the bankruptcy proceeding and the terms of the bankruptcy Settlement Agreement, and instead aided and abetted the fraudulent transfer of properties. (*Id.*) Lastly, Defendant Peterman is accused of knowing that the Plaintiff was "bringing various legal actions" against the Russis in both California and Oregon. (*Id.*)

Plaintiff now brings the following causes of action against Defendant Peterman: (1) fraudulent transfer with actual intent to hinder or delay and/or transfer to insider; (2) unjust enrichment; (3) aiding and abetting; and (4) civil conspiracy; and (5) monetary damages. (*See generally* Compl.) Defendant Peterman argues that all claims against him should be dismissed because this Court lacks personal jurisdiction over him. (*See generally* Mot.) Plaintiff opposes this Motion. (Opp'n. (ECF No. 11)).[2]

## II.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may assert a lack of personal jurisdiction as a defense, and request dismissal of the suit. Fed. R. Civ. P 12(b)(2). The plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). Absent an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003). "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citation omitted). The plaintiff may not rest solely on the "bare allegations of its complaint" but "uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). Furthermore, any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted).

////

---

[2] Defendant requests judicial notice of two documents: two complaints filed by Plaintiff in the Oregon Circuit Court for the County of Douglas, and requests that the fact of their filing be judicially noticed. (ECF No. 8.) The Court need not consider the documents contained in the request for judicial notice, and therefore the request is DENIED.

### III. Discussion

#### A. California's Long-Arm Statute Applies

Unless a federal statute authorizes personal jurisdiction, the district court applies the law of the forum state. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). California's long arm statute grants the exercise of personal jurisdiction to the extent allowed by the U.S. Constitution. Cal. Civ. Proc. Code § 410.10. Here, there is no relevant statute governing the issue of personal jurisdiction. Thus, this Court need only determine whether its exercise of personal jurisdiction over any defendant would offend constitutional due process requirements. *See Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1110 (9th Cir. 2002).

Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quotation marks omitted). Rather than use "mechanical" tests to determine personal jurisdiction, *id*. at 319, courts should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure," *id.* Under these standards, the Court now analyzes whether personal jurisdiction exists over Defendant Peterman.

#### B. The Court Lacks Personal Jurisdiction Over Defendant Peterman

Courts may have general or specific jurisdiction over an entity depending on the nature and extent of the entity's contact with the forum state. As an initial matter, neither party contends that general jurisdiction exists over Defendant Peterman. (*See* Opp'n at 1; Reply (ECF No. 12) at 4.) Thus, the Court's inquiry centers on the existence of specific jurisdiction. As a general rule, each defendant's contacts with the forum state must be assessed individually. *Calder v. Jones,* 465 U.S. 783, 790 (1984).

Specific jurisdiction requires a "strong relationship among the defendant, the forum, and the litigation." *Ford Motor Co. v. Montana Eighth Jud. Dist.,* 592 U.S. 351, 353 (2021) (citation and quotation marks omitted). The Ninth Circuit applies a three-

part "minimum contacts" test to determine whether exercising specific personal jurisdiction over a nonresident defendant is proper: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice; i.e, it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted).  "The plaintiff bears the burden of satisfying the first two prongs of the test" while the burden of the third prong rests on the defendant. *Schwarzenegger,* 374 F.3d at 802.  The Court will take each prong in turn.

### 1. Purposeful Availment and Direction

Purposeful availment and purposeful direction are distinct concepts. *Id*.  That said, there is no "rigid dividing line between these two types of claims." *Davis v. Cranfield Aerospace Sols., Ltd.,* 71 F.4th 1154, 1162 (9th Cir. 2023) (citation omitted). Instead, "courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiff's claims – which may mean looking at both purposeful availment and purposeful direction." *Id*.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008) (citation and quotation marks omitted). Similarly, purposeful direction involves intentional contact with the state.  It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" which are relevant to the inquiry. *Walden v. Fiore,* 571 U.S. 277, 285 (2014).  The defendant's mere knowledge that the plaintiff resides in the forum state "will not, on its own, support the exercise of specific jurisdiction. . . ." *Axiom,* 874 F.3d at 1070.  However, "individualized targeting may remain relevant to the minimum contacts inquiry," *id*., as "a defendant's contacts with the forum State

6

may be intertwined with his transactions or interactions with the plaintiff. . . ." *Walden*, 571 U.S. at 286. Only purposeful contacts, and not "random, fortuitous, or attenuated contacts" will give rise to personal jurisdiction. *Id*. (citation omitted).

Both Parties agree that the purposeful direction analysis is appropriate here as the causes of action rest in tort (*see* Opp'n. at 4; Mot. at 16). *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.,* 972 F.3d 1101, 1107 (9th Cir. 2020) ("Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort."). To assess whether purposeful direction exists, courts apply the "effects" test. *See Calder,* 465 U.S. at 787. Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (cleaned up). Defendant concedes that "any legal services provided by Peterman to Joseph or Deborah Russi in connection with pending litigation or the preparation of contracts or deeds would have been intentional." (Mot. at 17.) Accordingly, the Court will examine the second and third prongs of the effects test.

### i. Express Aiming

Plaintiff claims that Defendant Peterman engaged in conduct sufficient to show that he committed an intentional act expressly aimed at the forum state of California. The conduct included representation of the Russis, the fact that Defendant Peterman facilitated conversations with Plaintiff to address the Russis' alleged tortious behavior as part of his representation, and that Defendant Peterman failed to uphold the Settlement Agreement.[3] To satisfy the express aiming prong, the Supreme Court has

---

[3] In the Opposition, Plaintiff alleges that Defendant Peterman began representing the Russis "before they even left California." (*See* Opp'n at 13.) Because this allegation is not included in the operative Complaint, the Court does not consider it. Moreover, Plaintiff's sole, general allegation in the

7

made clear that courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *See Axiom,* 874 F.3d at 1070 (citing *Walden,* 571 U.S. at 289). The defendant's conduct must form the necessary connection with the forum state as the plaintiff cannot be the only link between the defendant and the forum. *See Bristol-Myers Squibb Co. v. Superior Court,* 582 U.S. 255, 265 (2017).

Taking the facts in the light most favorable to Plaintiff, it does not appear that Defendant's *own contacts* are "expressly aimed" at the forum state. The Complaint alleges that Defendant Peterman is an Oregon-based attorney, who represented Oregon residents in matters in Oregon. (Compl. ¶¶ 6–7, 11, 42.) Moreover, the properties that Defendant Peterman is accused aiding and abetting the transfer of appear to also be located in Oregon (*See id*. ¶¶ 50, 54). *Compare Wilson v. The Wealth Conservancy, Inc.,* No. 4:07-cv-01076 CW, 2007 WL 1288345, at *4 (N.D. Cal. Apr. 30, 2007) (finding that defendant expressly aimed conduct at the forum state, California, where a contract was drafted governing plaintiff's landlord relationship with a tenant living in her real property in California).

Next, the Court turns to Defendant Peterman's involvement with the Settlement Agreement. First, it does not appear that Defendant Peterman was a party to the agreement such that he would be bound by its terms. Rather, he represented the Russis in the bankruptcy proceedings where the agreement was signed. In the Complaint, Plaintiff appears to allege that Defendant Peterman was involved in and knew or should have known about the improper transfers of properties held in Defendant Russi's name to Defendant Oregon JV LLC while the bankruptcy proceedings were ongoing. Plaintiff also alleges that Defendant Peterman should have known about the terms of the Settlement Agreement yet violated the terms by aiding and abetting the transfer of properties. However, Plaintiff fails to clearly explain

---

Complaint that Defendant Peterman represented Joseph Russi "throughout this time period" does not show that Defendant Peterman directed his behavior to California. (*See* Compl. ¶ 11.)

what actions Defendant Peterman, himself, took to aid and abet the transfer of such properties, why his actions violated the Settlement Agreement, and how such actions were expressly aimed at California.[4] While Plaintiff seems to claim that Defendant Peterman knew Plaintiff would suffer harm in California, that argument cannot alone support a finding of express aiming. *See AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201, 1209 n.5 (9th Cir. 2020) (explaining that a "defendant's knowledge that harm may be inflicted on a plaintiff in a particular forum" cannot alone show express aim). Without more, the Court cannot find that express aiming by Defendant Peterman exists.

### ii. Causing Harm that the Defendant Knows is Likely to be Suffered in the Forum State

Lastly, the plaintiff must show that the defendant's "conduct caus[ed] harm that it knew was likely to be suffered in the forum." *See Yahoo!,* 433 F.3d at 1206. "This element is satisfied when [the] defendant's intentional act has foreseeable effects in the forum." *Fatnani v. JPMorgan Chase Bank,* 743 F. Supp. 3d 1253, 1269 (D. Or. 2024) (citing *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1131 (9th Cir. 2010), *abrogated on other ground as recognized in Axiom,* 874 F.3d at 1069–70). Thus, the question is whether it is foreseeable that Defendant Peterman's legal services provided to the Russis, and the preparation and drafting of any contracts or deeds pertaining to this litigation, have foreseeable effects in California. On the one hand, the Complaint alleges that the Plaintiff and the Russis had been involved in multiple disputes about the California trust fund assets. Yet it is unclear from the present allegations that Defendant Peterman knew that harm would occur in California by representing the Russis in their Oregon-based disputes. Thus, the Court finds that this requirement has not been satisfied.

---

[4] To the extent the Plaintiff rests on "Plaintiff's Response to Defendants' Motion for Summary Judgment" (ECF No. 1, Ex. 17,) to "explain to the Court how all of the parties. . .were working together to transfer the properties. . ." (Compl. ¶ 67,) the Court finds there is little to no discussion of Defendant Peterman's connection to the alleged scheme, nor does Plaintiff outline his connection in the Complaint.

### 2. Remaining Prongs

Because the Court finds that Plaintiff has not met its burden to demonstrate that Defendant Peterman purposefully directed his actions toward the forum state, Plaintiff has failed to show that this Court can exercise specific personal jurisdiction over him. Thus, the Court need not analyze the remaining prongs. *See Fatnani,* 743 F. Supp. 3d at 1271–72 (dismissing defendant for failure to satisfy the first prong of the minimum contacts test without analyzing the remaining prongs).

## IV. Conclusion

For the reasons about the Court GRANTS the Defendant's Motion to Dismiss for lack of Personal Matter Jurisdiction (ECF No. 5) with leave to amend. Plaintiff shall file a second amended complaint within twenty-one days of this order.

Dated: March 13, 2025

*/s/ Daniel J. Calabretta*
THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE